United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MULTI DENOMINATIONAL MINISTRY OF       No   C-06-4264 VRW
CANNABIS AND RASTAFARI, INC, et
al,                                         ORDER

            Plaintiffs,

            v

ALBERTO GONZALES, et al,

            Defendants.
_____/

        On July 12, 2006, plaintiffs sued in pro per seeking,
inter alia, declaratory and injunctive relief to prevent defendants
from interfering with the exercise of their religion, which
involves the use of marijuana.  Doc #1.  Defendants have moved to
dismiss the complaint pursuant to FRCP 12(b)(6).  Doc ##21, 34, 24.
For reasons that follow, the court GRANTS defendants' motions to
dismiss.

//

**United States District Court**
For the Northern District of California

**I**

**A**

"On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v Turner Broadcasting System, Inc, 135 F3d 658, 661 (9th Cir 1998)(citing Parks School of Business, Inc v Symington, 51 F3d 1480,1484 (9th Cir 1995)).  Accordingly, the facts upon which the court rules are those drawn from plaintiffs' complaint (Doc #1), taking their allegations as true.

In August 2002, agents from the federal DEA and sheriff deputies from Lake County confiscated 288 marijuana plants from plaintiffs' property in Upper Lake, California.  Doc #1, ¶ 19(c). Linda Senti, along with her husband Charles Lepp (who is not a party to the current suit) brought an action in this court, see Lepp et al v DEA et al, C-02-5901 VRW, alleging violations of their constitutional rights arising out of this search and seizure.  The court granted federal and municipal defendants' motions to dismiss on November 29, 2004.  Doc #58, 02-5901.

In August 2004, DEA agents, with the assistance of deputies from the Lake County sheriff's department, confiscated an additional 32,500 marijuana plants from the property.  Doc #1, ¶ 17(f).  In response, on February 8, 2005, Senti, Lepp and James Harris brought suit pro per in this court, see Lepp et al v Ashcroft et al, C-05-566 VRW, asserting seven causes of action against federal and municipal defendants stemming from the August 2004 search.  Doc #46, 05-566.  Plaintiffs sought compensation for the property seized and a permanent injunction prohibiting

defendants from seizing plaintiffs' marijuana in the future.  Id.
Soon thereafter, the court granted motions to dismiss filed by
federal and municipal defendants pursuant to FRCP 12(b)(1) and
12(b)(6).  Id at 22.

In February 2005, DEA agents confiscated from the same
property an additional 11,500 marijuana plants.  Doc #1, ¶ 17(h).
Due to the allegedly illegal activities taking place on plaintiffs'
property, the federal government filed forfeiture proceedings
against the property; these proceedings are currently pending in
the Northern District of California before Judge Patel.  Doc #1,
05-897 - MHP.

Plaintiffs incorporated Multi Denominational Ministry of
Cannabis and Rastafari ("MDMCR") on April 17, 2006.  Doc #3.  Three
months later, plaintiffs filed the present suit, alleging violation
of (1) the Free Exercise Clause and Establishment Clause of the
First Amendment, (2) the Religious Freedom Restoration Act of 1993
("RFRA"), (3) the Religious Land Use and Institutionalized Persons
Act, 42 USC § 2000cc ("RLUIPA") and (4) Proposition 215,
California's Compassionate Use Act of 1996.  Doc #1 at 24-27.
Plaintiffs seek declaratory and injunctive relief to prohibit
federal, state and local authorities from confiscating marijuana
plants grown on their property.  Id.

Presently before the court are motions to dismiss from
federal, municipal and state defendants.  Doc ##21, 34, 24.

B

FRCP 12(b)(6) motions to dismiss essentially "test
whether a cognizable claim has been pleaded in the complaint."

Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists.  Lee v City of Los Angeles, 250 F3d 668, 679 (9th Cir 2001).  This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim.  Leatherman v Tarrant County Narcotics Intell & Coord Unit, 507 US 163, 168 (1993) (citing Conley v Gibson, 355 US 41, 47 (1957)).  To this end, a plaintiff's complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim."  Wittstock v Van Sile, Inc, 330 F3d 899, 902 (6th Cir 2003).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Hughes v Rowe, 449 US 5, 9 (1980) (citing Haines v Kerner, 404 US 519, 520 (1972)).  See also Conley, 355 US at 45-46.  All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  See In re Silicon Graphics Inc Sec Litig, 183 F3d 970, 980 n10 (9th Cir 1999).  The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion to dismiss.  Parks School of Business, Inc v Symington, 51 F3d 1480, 1484 (9th Cir 1995).  The court may not, however, consider

United States District Court

For the Northern District of California

other documents outside the pleadings.  Arpin v Santa Clara Valley Transp Agency, 261 F3d 912, 925 (9th Cir 2001).

## II

The court first addresses the procedural defects asserted by defendants, starting with the argument that sovereign immunity precludes plaintiffs' constitutional claim against federal and state defendants.

### A

The party asserting federal jurisdiction has the burden of proving the facts necessary for such jurisdiction.  See Clayton Brokerage Co of St Louis, Inc v Bunzel, 820 F2d 1459, 1462 (9th Cir 1987).  See also Cornelius v Moxon, 301 F Supp 783, 785-86 (D ND 1969) (party seeking relief is required either to plead the basis of federal jurisdiction or facts that would give rise to such jurisdiction).

A suit against federal employees in their official capacities is considered a suit against the United States and thus subject to the defense of sovereign immunity.  Hawaii v Gordon, 373 US 57, 58 (1963); Larson v Domestic & Foreign Commerce Corp, 337 US 682, 704 (1949).  Accordingly, such suits cannot be maintained unless Congress has explicitly waived the sovereign immunity of the United States.  Lane v Pena, 518 US 187 (1996).  Absent an explicit waiver, a district court lacks subject matter jurisdiction over any claim against the United States.  See Orff v United States, 358 F3d 1137, 1142 (9th Cir 2004) ("Any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction.")

United States District Court
For the Northern District of California

(citing <u>Gilbert v DaGrossa</u>, 756 F2d 1455 (9th Cir 1985)).
Likewise, absent a state's consent, the Eleventh Amendment bars
suits against state officials in their official capacity.  <u>Seminole</u>
<u>Tribe of Florida v Florida</u>, 517 US 44, 55 (1996).

Federal officers may be sued in their <u>personal</u> capacities
for violating an individual's constitutional rights.  See <u>Bivens v</u>
<u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 US
388, 389 (1971).  If an officer is sued in his personal capacity,
as opposed to his official capacity, the suit is not against the
United States, and thus money damages can be received.  Id at 395.
Additionally, under the <u>Ex parte Young</u> exception to sovereign
immunity, a party may obtain prospective relief against a state
official provided the official is sued in his personal capacity.
<u>Ex parte Young</u>, 209 US 123, 159-60 (1908); <u>Pennhurst State School &</u>
<u>Hospital v Halderman</u>, 465 US 89, 114 (1984).

In the present case, plaintiffs bring suit against
officers of California and the United States in their <u>official</u>
capacities.  Doc #1, ¶¶ 4-6.  Accordingly, for this court to have
jurisdiction over these claims, plaintiffs must plead a proper
statute that waives the sovereign immunity.  See <u>Williams v United</u>
<u>States</u>, 405 F2d 951, 954 (9th Cir 1969) ("If facts giving the court
jurisdiction are set forth in the complaint, the provision
conferring jurisdiction need not be specifically pleaded")
(citation omitted).

As for legal theories of relief, plaintiffs' complaint is
difficult to decipher.  The complaint refers to the First, Fifth
and the Fourteenth Amendment.  The court construes plaintiffs'
invocation of these amendments as asserting claims for relief under

<u>Bivens v Six Unknown Named Agents</u>, 403 US 388 (1971), for deprivation of their constitutional rights under color of federal law.  But even so construed, plaintiffs' constitutional claim must fail:  A <u>Bivens</u> action does not lie against federal agencies or the United States, which possess sovereign immunity; such actions may be brought only against named federal officers or agents in their personal capacity.  See <u>FDIC v Meyer</u>, 510 US 471, 483-86 (1994).  Plaintiffs sue state and federal officials in their <u>official</u> capacities, in violation of the sovereign immunity of California and the United States.  As sovereign immunity is "jurisdictional in nature," id at 475, the court lacks jurisdiction over plaintiffs' constitutional claim against federal and state officials.

B

Next, the court addresses municipal defendants' contention that claims brought by MDMCR should be dismissed because MDMCR is a corporation represented by laypersons.  Doc #24 at 4-5.  Although 28 USC § 1654 permits "parties to plead their cases personally," it does not extend to non-individuals.  <u>Eagle Associates v Bank of Montreal</u>, 926 F2d 1305, 1307 (2d Cir 1991).  Hence, a corporation must appear in court through an attorney; it cannot be represented by laypersons.  <u>In re America West Airlines</u>, 40 F3d 1058, 1059 (9th Cir 1994) ("Corporations and other unincorporated associations must appear in court through an attorney."); <u>Church of the New Testament v United States</u>, 783 F2d 771, 773 (9th Cir 1986) (citing <u>In re Highley</u>, 459 F2d 554, 555 (9th Cir 1972)).

//

7

United States District Court
For the Northern District of California

Plaintiffs concede that MDMCR is a "religious non profit corporation of the State of California," Doc #1 at 3, and is not represented by counsel.  Doc #45.  Moreover, in their opposition, plaintiffs express an unwillingness to obtain counsel for MDMCR. Id at 7.  Accordingly, the court dismisses with prejudice all claims brought by MDMCR.

C

The court turns to defendants' contention that plaintiffs lack standing.  The constitutional aspect of standing centers on whether plaintiffs have made out a "case or controversy" within the meaning of Article III of the Constitution.  <u>Warth v Seldin</u>, 422 US 490, 498 (1975).  To establish standing under Article III, a plaintiff must satisfy three elements:  (1) "the plaintiff must have suffered an injury in fact —— an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id at 560-61 (internal quotation marks, citations and footnote omitted).  If plaintiffs seek prospective injunctive relief, as here, they must demonstrate a "real and immediate threat" of future injury in order to satisfy the "injury in fact" requirement.  <u>Nat'l Parks Conservation Ass'n v Norton</u>, 324 F3d 1229, 1241 (11th Cir 2003); <u>City of Los Angeles v Lyons</u>, 461 US 95, 103-104 (1983).

//

8

United States District Court
For the Northern District of California

Defendants argue that plaintiffs, except Linda Senti, lack standing to bring suit because Senti (and her husband) are the sole owners of the real property and none of the other plaintiffs has any legal interest in the subject property.  Doc #24 at 5. Defendants cite <u>Santos v County of Los Angeles Dept of Children and Family Services</u>, 299 F Supp 3d 1070, 1079 (CD Cal 2004), for the proposition that standing requires an established legal interest in property in order to challenge a search and seizure.  Id.  But this argument misses the mark.  Plaintiffs assert a violation of the First Amendment, not the Fourth Amendment; hence, the special standing requirements from <u>Santos</u> are inapposite.  See Doc #1, ¶ 24 (claiming that the attacks on the property occurred in "violation of the First Amendment's recognition of our right to establish and exercise our religion").

Because this is a motion to dismiss, all material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiffs.  See <u>In re Silicon Graphics Inc Sec Litig</u>, 183 F3d 970, 980 n10 (9th Cir 1999).  Plaintiffs plead a recognized injury — violation of their right to establish and exercise a religion.  And this right does not cease at one's property line.  That plaintiffs lack legal title to the property where they practice their religion does not preclude them from having standing to allege violations of the First Amendment.

D

Defendants also argue that plaintiffs' suit is unripe because the existence of the dispute between the parties hangs on future contingencies that may or may not occur.  See Doc #21 at 6.

**United States District Court**
For the Northern District of California

In view of the protracted dispute between the parties, the court disagrees.  The allegations in the complaint, if construed in the light most favorable to plaintiffs, suggest it is unlikely that defendants will cease from confiscating plaintiffs' marijuana. Defendants have searched the subject property and seized marijuana and other materials on three different occasions.  In addition, plaintiffs assert they intend to continue growing marijuana as part of their religious practice.  Plaintiffs' claims are thus ripe for review.

E

Finally, defendants assert that res judicata precludes plaintiffs' suit.  Res judicata "bars re-litigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits." Tahoe Sierra Preservation Council Inc v Tahoe Regional Planning Agency, 322 F3d 1064, 1078 (9th Cir 2003). "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather the relevant inquiry is whether they could have been brought."  Id.

But res judicata's preclusive force is extinguished by an intervening change in the law.  See Clifton v Attorney General of State Of California, 997 F2d 660, 663 (9th Cir 1993) (citing State Farm v Duel, 324 US 154, 162 (1945)).  That exception applies here.  For reasons discussed *infra*, the Supreme Court's decision in Gonzales v O Centro Espirita Beneficente Uniao do Vegetal, 126 S Ct 1211, 1217 (2006), shifted the legal terrain surrounding

**United States District Court**
For the Northern District of California

plaintiffs' suit, thereby warranting reexamination of the grounds for relief raised in plaintiffs' previous petition.  Accordingly, the intervening change triggered by the <u>O Centro</u> decision is sufficient to invoke the exception to res judicata recognized in <u>Clifton</u>.

III

Having dealt with the procedural defects asserted by defendants, the court turns to the merits of plaintiffs' arguments. The following claims remain:  (1) the RLUIPA claim against all defendants, (2) the First Amendment claim against municipal defendants and (3) the RFRA claim against federal defendants. Defendants argue that these claims merit dismissal because they are not premised on a cognizable legal theory.  For reasons discussed below, the court dismisses all three claims, but grants plaintiffs leave to amend their RFRA claim against federal defendants.

A

Plaintiffs' claim under the Religious Land Use and Institutional Persons Act of 2000 (RLUIPA), 42 USC § 2000cc, warrants dismissal because it does not apply to the present situation.  RLUIPA's general rule applies if a "land use regulation," or the government's application of a land use regulation, "substantially burdens a religious adherent's religious exercise in a way not representing the least restrictive means or accomplishing a compelling government interest."  <u>San Jose Christian College v City of Morgan Hill</u>, 360 F3d 1024, 1036 (9th Cir 2004).  RLUIPA specifically defines a "land use regulation" as:

11

United States District Court

For the Northern District of California

> [A] zoning or landmarking law, or the application of such law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), and if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest."

42 USC §2000cc-5(5).

Under this definition, a government agency implements a "land use regulation" when it acts pursuant to a "zoning or landmarking law." Prater v City of Burnside, 289 F3d 417, 434 (6th Cir 2002).

Here, plaintiffs challenge the enforcement of the CSA, which does not constitute a zoning or landmarking law. Accordingly, RLUIPA does not apply to the case at bar and this claim is dismissed.

**B**

Next, the court addresses plaintiffs' First Amendment claim against municipal defendants.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  US Const amend I.  As interpreted by the Supreme Court, the Free Exercise Clause of the First Amendment does not prohibit the government from burdening religious practices through generally applicable laws. Employment Division v Smith, 494 US 872, 890 (1990).  In Smith, defendant was a member of the Native American church who ingested peyote for sacramental purposes at a church ceremony.  As a result, defendant's employer, a private drug rehabilitation organization, fired him.  When defendant applied for unemployment compensation, the state agency denied his application because a state statute

**United States District Court**
For the Northern District of California

1  disqualified individuals who had been fired for work-related

2  "misconduct." Id at 874. Defendant sued, arguing that the denial

3  of unemployment compensation burdened his First Amendment right to

4  exercise his religion freely. The Court rejected defendant's

5  argument and held that neutral, generally applicable laws may be

6  applied to religious practices, even when not supported by a

7  compelling government interest. 494 US at 884-85.

8       The parallels of Smith to this case are striking. Like

9  the defendant in Smith, plaintiffs use a controlled substance in

10 the practice of their religion, and the government proscribes such

11 use through neutral, generally applicable laws. Under Smith, then,

12 the government may constitutionally punish plaintiffs, even if

13 doing so substantially burdens their ability to practice their

14 religion. Accordingly, plaintiffs' First Amendment claim is

15 dismissed.

16

17                              C

18      Finally, the court addresses plaintiffs' claim that the

19 federal government's enforcement of the CSA violates the Religious

20 Freedom Restoration Act (RFRA). The RFRA arises out of a

21 fascinating interplay between Congress and the Supreme Court,

22 beginning with the Smith case. See Smith, 494 US at 890. As

23 mentioned above, the Court in Smith rejected a challenge to an

24 Oregon statute that denied unemployment benefits to drug users,

25 including Native Americans engaged in the sacramental use of

26 peyote. In so doing, the Court held that the Free Exercise Clause

27 of the First Amendment does not prohibit the government from

28 burdening religious practices through generally applicable laws.

United States District Court

For the Northern District of California

Id.  The Smith decision overturned the Court's prior interpretation of the Free Exercise Clause, as articulated in Sherbert v Verner, 374 US 398 (1963), which required courts to inquire whether a statutory or regulatory prohibition "substantially burdened a religious practice and, if it did, whether the burden was justified by a compelling government interest."  City of Boerne v Flores, 521 US 507, 513 (1997).

Congress responded to the Smith decision by enacting the RFRA for the express purpose of restoring the Sherbert Free Exercise test.  See 42 USC § 2000bb(b)(1); Gonzales v O Centro Espirita Beneficente Uniao do Vegetal, 126 S Ct 1211, 1217 (2006). Under the RFRA, the government may not, as a statutory matter, substantially burden a person's exercise of religion, "even if the burden results from a rule of general applicability."  42 USC § 2000bb-(1)(a).  The only exception recognized by the statute requires the government to satisfy the compelling interest test: to "demonstrat[e] that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  Id, § 2000bb-1(b).

The RFRA's judicial relief provision is couched in exceptionally broad terms:  "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  Id § 2000bb-1(c).  In its definition section, the RFRA provides that "[t]he term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color

**United States District Court**
For the Northern District of California

of law) of the United States."  Id § 2000bb-2(1).

As originally enacted, the RFRA applied to states as well as the federal government.  But the Supreme Court ruled in <u>City of Boerne v Flores</u>, 521 US 507 (1997), that Congress lacks the constitutional authority under § 5 of the 14th Amendment to enforce the RFRA against the states.  521 US at 536.  This decision did not, however, affect Congress's power to enforce the RFRA against the federal government.  <u>Worldwide Church of God v Phila Church of God, Inc</u>, 227 F3d 1110, 1120 (9th Cir 2000) ("We have held, along with most other courts, that the Supreme Court invalidated RFRA only as applied to state and local governments").  See also <u>Holy Land Found for Relief & Dev v Ashcroft</u>, 333 F3d 156, 167 (D C Cir 2003).  The ironic upshot of the <u>City of Boerne</u> decision is that it precluded the RFRA's application to the very situation the Act was intended to remedy:  the <u>Smith</u> decision, after all, concerned a state statute (the federal government has exempted the use of peyote for Native Americans churches since the CSA's enactment).  See 21 CFR § 1307(31) (2005).

Notwithstanding this turn of events, the RFRA remains on the books.  Indeed, the Supreme Court recently clarified the RFRA's effect in <u>Gonzales v O Centro Espirita Beneficente Uniao do Vegetal</u>, 126 S Ct 1211 (2006), in which the Court upheld an injunction barring the government's enforcement of the CSA against a religious group's sacramental use of hoasca, a hallucinogenic tea.  In <u>O Centro</u>, the government argued that the CSA precludes any consideration of individualized exceptions because to do so would undermine the entire regulatory regime.  Id at 1220.  The Supreme Court rejected this argument, asserting it was "fatally

United States District Court
For the Northern District of California

undermine[d]" by the example of the government's regulatory exemption for use of peyote – a Schedule I substance – by the Native American church.  See 21 CFR § 1307(31) (2005).  The Court instead endorsed a "case-by-case consideration of religious exemptions to generally applicable rules."  Id at 1223.

Due to the case-by-case inquiry mandated by the <u>O Centro</u> decision, the RFRA forces courts into the awkward position of assessing the sincerity of a group's religious beliefs and then carving out exceptions to federal statutes in order to accommodate these beliefs.  See <u>O Centro</u>, 126 S Ct at 1222 (concluding that the RFRA contemplates "judicially crafted exceptions" to federal laws).  Moreover, the stringent standard provided by the RFRA suggests that in delegating to the judicial branch the job of ensuring that federal law accommodates religion, Congress underestimated both the diversity of America's religious practices and the resourcefulness of its practitioners (and their attorneys).  The present case thus serves as a prelude to the litigation to come.

Reservations aside, the court accepts, as it must, Congress's charge under the RFRA and turns to plaintiffs' claim. To establish a prima facie claim of a RFRA violation, plaintiffs must demonstrate that the federal government's enforcement of the CSA works a substantial burden on their ability to practice their religion freely.  <u>Guerrero</u>, 290 F3d at 1222; see also <u>United States v Israel</u>, 317 F3d 768, 771 (7th Cir 2003) ("[U]nder RFRA, a plaintiff establishes a prima facie violation if he can demonstrate that the government's action was a (1) substantial burden on a (2) sincere (3) exercise of religion.").  If a prima facie case is established, the burden shifts to the government to satisfy the

United States District Court
For the Northern District of California

RFRA's compelling interest test.  Id, § 2000bb-1(b).

Plaintiffs allege that to exercise their religion, they must possess and consume marijuana as mandated by their sincere religious beliefs in the Rastafari faith.  Doc #1, ¶ 17(b).  In particular, plaintiffs allege that marijuana plays a central role in three sacraments.  First, members of MDMCR receive communion by consuming wafers containing marijuana extract.  Id, ¶ 17(b)(4).  Second, in the "sacrament of the incense," church leaders apparently burn marijuana so that church members may "inhal[e] from the Alter of the Incense."  Id, ¶ 17(b)(5).  Third, marijuana is used in anointing oil, a ritual allegedly performed by Moses.

> Moses wrote that we can make an anointing oil to anoint sons to be priests.  The ingredients include 16 ounces of marijuana extracted into a quart of oil.  This was applied by pouring over the uncut dreadlocks of the young Nazarene "Sampson" who came for his anointing.  In Psalms it says, poured over the head until it falls from the edge of the beard onto the skirt of the garmet.  This child was stoned for a week.

Id, ¶ 18(b).  As the Ninth Circuit has already acknowledged, "Rastafarianism is a legitimate religion, in which marijuana plays a necessary and central role."  Guerrero, 290 F3d at 1213 (citing United States v Bauer, 84 F3d 1549, 1556 (9th Cir 1996)).  Defendants allege that plaintiffs are not sincere Rastifarians, but plainly it is inappropriate to question the sincerity of plaintiffs' religious beliefs in a Rule 12(b)(6) motion.

To determine whether enforcement of the CSA imposes a substantial burden, the court finds instructive the pre-Smith case law applying this standard.  Looking to that body of precedent, a statute burdens the free exercise of religion if it "puts substantial pressure on an adherent to modify his behavior and to

**United States District Court**
For the Northern District of California

violate his beliefs," <u>Thomas v Review Bd of Ind Employment Sec Div</u>, 450 US 707, 718 (1981), including when, if enforced, it "results in the choice to the individual of either abandoning his religious principle or facing criminal prosecution." <u>Braunfeld v Brown</u>, 366 US 599, 605 (1961).  A substantial burden must be more than an "inconvenience." <u>Worldwide Church</u>, 227 F3d at 1121.

The existence of a substantial burden on religious exercise also hinges on the scope of the asserted religious exemption.  For example, in <u>United States v Bauer</u>, 84 F3d 1549 (9th Cir 1996), the Ninth Circuit concluded that the RFRA may preclude prosecution against a group of Rastifarian defendants for simple possession of marijuana, but "[a]s to the counts relating to conspiracy to distribute, possession with intent to distribute, and money laundering, the religious freedom of the defendants was not invaded" because "[n]othing before [the court] suggest[ed] that Rastafarianism would require this conduct."  84 F3d at 1559.  Likewise, in <u>Guam v Guerrero</u>, 290 F3d 1210 (9th Cir 2002), the Ninth Circuit held that the RFRA provides no defense to a defendant who was prosecuted for importation of marijuana, reasoning that "Rastafarianism does not require *importation* of a controlled substance, which increases the availability of controlled substances and makes it harder for Guam to control."  Id at 1223 (emphasis in original).  Hence, the court concluded that defendant's right to exercise his religion freely was not substantially burdened because the scope of defendant's conduct exceeded the religious justification he proffered.

The analysis in <u>Bauer</u> and <u>Guerrero</u> sheds light on the issues in the present action.  Here, plaintiffs allege that the

**United States District Court**
For the Northern District of California

United States, via the enforcement of the Controlled Substance Act (CSA), 21 USC § 841, substantially burdens the exercise of their religion.  Yet the court cannot understand why plaintiffs require an unconditional injunction in order to partake of the various marijuana-related sacraments described in their complaint.  See Doc #1, ¶ 56(c) (asking the court to "enjoin[] defendants from enforcing the CSA against plaintiffs to prohibit [plaintiffs] growing and use of marijuana on the MDMCR and member properties").

In a similar vein, plaintiffs' asserted religious practices bear little relation to the scope of marijuana production and distribution acknowledged in their complaint.  This disparity troubled Judge Patel in plaintiffs' forfeiture proceedings.  In response to plaintiffs' argument, Judge Patel did not mince words:

> That many thousand plants?  We're not talking religion; we are not talking sacrament; we are talking about big-time marijuana.

Doc #57 at 10:11-13

In his dissent in the Smith case, Justice Blackmun drew a useful comparison between Native American use of peyote and the sacramental use of wine by Christians, noting that during Prohibition, the federal government exempted such use of wine from its general ban on possession and use of alcohol.  Smith, 494 US at 915 n 6 (citing National Prohibition Act, Title II, § 3, 41 Stat 308).  To Justice Blackmun, the comparison was appropriate because defendants' use of peyote was "carefully circumscribed [within the] ritual context," in contradistinction to "the irresponsible and unrestricted recreational use of unlawful drugs."  Id at 914-15.

Here, portions of plaintiffs' complaint describe limited ceremonial practices akin to Native American use of peyote and the

United States District Court

For the Northern District of California

sacramental use of wine by Christians.  But other parts of the complaint suggest plaintiffs' activities amount to the "unrestricted recreational use of unlawful drugs."  See <u>Smith</u>, 494 US at 915.  In particular, plaintiffs acknowledge extensive marijuana production and distribution and seek an unconditional injunction against government intervention.  Nothing before the court explains why the asserted sacraments of the Rastafari faith require complete immunity from the federal government's drug laws. Accordingly, the scope of relief sought in plaintiffs' complaint is fatal to their prima facie case under the RFRA.

Because plaintiffs have not sufficiently pled a prima facie case under RFRA, the court declines to assess whether the RFRA's exemption applies, i e, whether the government's enforcement of the CSA against plaintiffs furthers a compelling governmental interest and is the least restrictive means of doing so.  See 42 USC § 2000bb-1(b).  The court may return to this issue and have to grapple with the perplexities Congress's enactment of the RFRA has created if plaintiffs amend their RFRA claim and make out a prima facie case.

B

Having dismissed plaintiffs' federal claims, the court addresses plaintiffs' California state law claim.  28 USC § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a [supplemental] claim * * * [if] the district court has dismissed all claims over which it has original jurisdiction."  The Ninth Circuit has held that these provisions give federal courts discretion either to retain or to

**United States District Court**
For the Northern District of California

1   dismiss a case after all federal claims have been dismissed.

2   Albingia Versicherungs AG v Schenker Int'l, 2003 US App LEXIS

3   24302, *13-15 (9th Cir 2003).  When determining whether to retain

4   supplemental jurisdiction, the court is guided by the values "of

5   economy, convenience, fairness, and comity."  Acri v Varian Assocs,

6   114 F3d 999, 1001 (9th Cir 1997) (en banc) (quoting Allen v City of

7   Los Angeles, 92 F3d 842, 846 (9th Cir 1996)) (internal quotation

8   marks omitted).  Nonetheless, "in the usual case in which all

9   federal-law claims are eliminated before trial, the balance of

10  factors * * * will point toward declining to exercise jurisdiction

11  over the remaining state-law claims."  Executive Software N Am v

12  United States Dist Court, 24 F3d 1545, 1553 n4 (9th Cir 1994)

13  (emphasis omitted) (quoting Carnegie-Mellon Univ v Cohill, 484 US

14  343, 350 n7 (1988)) (internal quotation marks omitted).

15          If plaintiffs decline to amend their complaint, then

16  dismissing plaintiffs' state claim would be the most appropriate

17  course of action.  Exercising supplemental jurisdiction would

18  neither promote judicial economy nor convenience to the parties

19  because the case is still in its early stages.  And aside from

20  defendants' current motions to dismiss, the court has yet to

21  consider any dispositive motions in this case.  Accordingly,

22  pursuant to 28 USC § 1367(c)(3), the court DECLINES to exercise

23  supplemental jurisdiction over plaintiffs' state law claim.

24  Plaintiffs are, of course, free to refile this claim in state

25  court, subject to the tolling provisions of 28 USC § 1367(d).

26  //

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV

In sum, the court GRANTS defendants' motions to dismiss plaintiffs' federal claims under FRCP 12(b)(6); dismissal of all claims by MDMCR and dismissal of all claims by the remaining plaintiffs except the claims pursuant to the RFRA are <u>with</u> <u>prejudice</u>.  Pursuant to 28 USC § 1367(c)(3), the court DECLINES to exercise supplemental jurisdiction over the remaining state-law claim.  The court GRANTS all plaintiffs except MDMCR leave to file an amended complaint alleging a claim under the RFRA against federal defendants by March 20, 2007.


IT IS SO ORDERED.



_____

VAUGHN R WALKER

United States District Chief Judge