IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTI DENOMINATIONAL MINISTRY OF CANNABIS AND RASTAFARI, INC, et al, | No   C 06-4264 VRW |
| Plaintiffs, | ORDER |
| v | |
| MICHAEL MUKASEY, et al, | |
| Defendants. | |

Plaintiffs are again before the court facing a motion to dismiss their complaint. Doc #95. On February 2, 2007, the court granted defendants' motions to dismiss plaintiffs' original complaint and granted plaintiffs leave to file an amended complaint alleging a claim under the Religious Freedom Restoration Act of 1993 ("RFRA") against federal defendants. Doc #64. Plaintiffs' first amended complaint ("FAC") violated the court's instructions and reasserted all claims against federal defendants. Doc #66. Only one plaintiff signed the FAC and subsequent to its filing, one plaintiff, Reverend Tom Brown, requested that the court "excuse"

him from the suit. Doc #82. Plaintiffs then requested leave to amend their complaint yet again. Doc #85. On April 24, 2007, the court granted leave to amend on the condition that plaintiffs confine the second amended complaint to only a RFRA claim against federal defendants in their official capacities. Doc #89. Plaintiffs filed their second amended complaint ("SAC") on May 17, 2007. Doc #92.

Defendants responded with a renewed motion to dismiss. Doc #95. Plaintiffs failed to oppose defendants' motion to dismiss, and the court issued an order to show cause why the motion should not be treated as unopposed. Doc #106. On August 16, 2007, plaintiffs filed a document that did not address the court's order to show cause but was instead a late-filed opposition to the motion to dismiss. Doc #108. The parties have taken no action since that time.

Plaintiffs' SAC violates the court's order because it asserts federal constitutional claims outside of RFRA and sues defendants in their individual capacities. Doc #92. Accordingly, the court will STRIKE any allegations or causes of action in the complaint that are immaterial to a RFRA claim. See Fed R Civ P 12(f)(1). The court will also STRIKE paragraph five in the complaint and any other statements that reference MDMCR as a plaintiff because the court has already dismissed with prejudice all of MDMCR's claims. See Doc #64 at 7-8.

The court will grant plaintiffs relief from one of its violations, however. Plaintiffs sued the federal defendants in their personal capacities instead of official capacities as directed. See Doc #89 at 2. Still, the court will construe the

2

SAC as asserting a RFRA claim against defendants in their official capacities because the court senses that plaintiffs made an honest mistake. In their typewritten SAC, plaintiffs wrote that each defendant is being sued in his or her "official and personal capacities," but then crossed out the words "official and" in black ink. Doc #92 at 5-6. Plaintiffs also typed that they are suing [former Attorney General] Alberto Gonzalez in "his official capacities" but subsequently crossed out "official" and handwrote "personal" over it. Doc #92 at 4. The court interprets this as a sign that plaintiffs attempted to bring their complaint into compliance through the handwritten changes, but they misunderstood the court's instructions. Consider Doc #64 at 7 (holding, perhaps confusingly, that <u>Bivens</u> claims must be brought against defendants in their personal capacities). Thus, the court will construe plaintiffs' SAC as suing defendants in their official capacities only. See <u>Jackson v Carey</u>, 353 F3d 750, 757 (9th Cir 2003) ("In civil rights cases, where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").

The court now addresses defendants' motion to dismiss the second amended complaint. Plaintiffs' response to the court's order to show cause shall be treated as an opposition to the motion. The second amended complaint is deemed to assert a RFRA claim against the federal defendants in their official capacities only. The court finds this matter suitable for determination without oral argument. Because plaintiffs fail to state a claim under RFRA, the court GRANTS defendants' motion.

3

I

A

"On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." <u>Wyler Summit Partnership v Turner Broadcasting System, Inc</u>, 135 F3d 658, 661 (9th Cir 1998), citing <u>Parks School of Business, Inc v Symington</u>, 51 F3d 1480, 1484 (9th Cir 1995). Accordingly, the facts upon which the court rules are those drawn from plaintiffs' complaints (Doc ##1, 92), taking their allegations as true.

In August 2002, agents from the federal DEA and sheriff deputies from Lake County confiscated 288 marijuana plants from plaintiffs' property in Upper Lake, California. Doc #1 at ¶19(c). Linda Senti, along with her husband Charles Lepp (who is not a party to the current suit) brought an action in this court (see <u>Lepp et al v DEA et al</u>, C 02-5901 VRW), alleging violations of their constitutional rights arising out of that search and seizure. The court granted federal and municipal defendants' motions to dismiss on November 29, 2004. Doc #58, 02-5901.

In August 2004, DEA agents, with the assistance of deputies from the Lake County sheriff's department, confiscated an additional 32,500 marijuana plants from the property. Doc #1 at ¶17(f). In response, on February 8, 2005, Senti, Lepp and James Harris sued in this court (see <u>Lepp et al v Ashcroft et al</u>, C 05-566 VRW), asserting seven causes of action against federal and municipal defendants stemming from the August 2004 search. Doc #46, 05-566. Plaintiffs sought compensation for the property seized and a permanent injunction prohibiting defendants from

4

seizing plaintiffs' marijuana in the future. Soon thereafter, the court granted motions to dismiss filed by federal and municipal defendants. Plaintiffs appealed to the Ninth Circuit, which affirmed on January 22, 2008. The Ninth Circuit's judgment was filed in the district court on March 19, 2008, and became effective on March 24, 2008, when the mandate was spread in the district court. Doc ##59-60, 05-566.

In February 2005, DEA agents confiscated from the same property an additional 6746 marijuana plants. Doc #92 at ¶24. Due to the allegedly illegal activities taking place on plaintiffs' property, the federal government filed forfeiture proceedings against the property; these proceedings are currently pending in the Northern District of California before Judge Patel. Doc #1, 05-897 (MHP).

On April 17, 2006, plaintiffs incorporated Multi Denominational Ministry of Cannabis and Rastafari ("MDMCR"). Doc #3. Three months later, plaintiffs filed the present suit arising out of the February 2005 raid, alleging violations of (1) the Free Exercise Clause and Establishment Clause of the First Amendment; (2) RFRA; (3) the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc ("RLUIPA") and (4) Proposition 215, California's Compassionate Use Act of 1996. Doc #1 at 24-27. Plaintiffs' original complaint sought declaratory and injunctive relief to prohibit federal, state and local authorities from confiscating marijuana plants grown on their property.

After amending their complaint twice, plaintiffs now assert RFRA claims and constitutional claims against the Attorney General of the United States; the Drug Enforcement Administration;

5

Karen Tandy, Administrator of the DEA; McGregor Scott, United States Attorney for the Eastern District of California and Doe I, DEA Group Supervisor. Doc #92 at 4-5.

B

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988). FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists. Lee v City of Los Angeles, 250 F3d 668, 679 (9th Cir 2001). This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim. Leatherman v Tarrant County Narcotics Intell & Coord Unit, 507 US 163, 168 (1993), citing Conley v Gibson, 355 US 41, 47 (1957). Rule 8(a) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp v Twombly, 127 S Ct 1955, 1968 (2007). "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."'" Erickson v Pardus, 127 S Ct 2197, 2200 (2007), quoting Twombly quoting Conley v Gibson, 355 US 41, 47 (1957). The Supreme Court reiterated recently that documents filed

by pro se plaintiffs should be construed more liberally than documents filed by attorneys. See Erickson, 127 S Ct at 2200.

The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion to dismiss. Parks School of Business, Inc v Symington, 51 F3d 1480, 1484 (9th Cir 1995). The court may not, however, consider other documents outside the pleadings. Arpin v Santa Clara Valley Transp Agency, 261 F3d 912, 925 (9th Cir 2001).

## II

Plaintiffs fail to state a claim under RFRA for two reasons. First, plaintiffs request compensatory damages stemming from the February 2005 raid (see Doc #92 at ¶¶24, 37), but RFRA does not permit money damages. Second, plaintiffs claim they are entitled to distribute thousands of marijuana plants as part of their religious exercise, but the government may prohibit such large-scale drug circulation even under RFRA.

### A

As the court has determined previously, RFRA does not waive sovereign immunity and authorize lawsuits for money damages. See Doc #46 at 15-16, 05-566 (VRW). Since that time, the DC Circuit, for one, has approved of this court's holding. See Webman v Federal Bureau of Prisons, 441 F3d 1022, 1026 & n2 (DC Cir 2006). See also Webman, 441 F3d at 1028 (Tatel concurring); Madison v Virginia, 474 F3d 118, 131-32 (4th Cir 2006). Accordingly, plaintiff's claims for return of the seized property or money damages under RFRA are dismissed with prejudice.

7

**B**

**1**

Although RFRA permits injunctive relief in lieu of damages, such relief has its limits. RFRA authorizes federal courts to grant "appropriate relief." 42 USC § 2000bb-1(c). The court stated previously that because the practice of Rastafarianism does not require mass production and distribution of marijuana, the court "cannot understand why plaintiffs require an unconditional injunction in order to partake of the various marijuana-related sacraments described in their complaint." Doc #64 at 19.

In the various complaints, plaintiffs explain in detail that their use of marijuana includes distribution to people outside the religion. Doc ##1 at 12-14, 66 at 17. This distribution includes giving marijuana to non-church members for medical use and giving marijuana-infused wafers to "the sick and needy". Doc #1 at 12-14. Plaintiffs state that "until recently, the holy men of all peoples were the healers." Doc #108 at ¶4. The court interprets these statements as a claim that part of plaintiffs' religious mission is to heal the sick. Doc #1 at 15-16. To accomplish that mission, plaintiffs need to distribute marijuana. For instance, plaintiffs attach to their opposition a letter dated June 29, 2007, from church member Joseph Rogers praising the Lord and thanking plaintiffs for using cannabis to heal his wife's pregnancy complications caused by epilepsy and morning sickness. Doc #108.

Plaintiffs do not state that these religious healing missions are required by their religion, but that flaw does not affect their claim. In 2000, Congress amended RFRA to define "religious exercise" as "any exercise of religion, whether or not

8

compelled by, or central to, a system of religious belief." 42 USC § 2000bb–2(4), § 2000cc–5(7)(A). That amendment defines "religious exercise" quite broadly. See <u>Guru Nanak Sikh Soc of Yuba City v County of Sutter</u>, 456 F3d 978, 994 n21 (9th Cir 2006) ("This definition of 'religious exercise' is broader than the [old] definition in RFRA."); <u>United States v Zimmerman</u>, 514 F3d 851, 853-54 (9th Cir 2007); <u>Navajo Nation v United States Forest Serv</u>, 479 F3d 1024, 1033 (9th Cir 2007) (holding that "RFRA now protects a broader range of religious conduct than the Supreme Court's interpretation of 'exercise of religion' under the First Amendment" and disclaiming the "required by" language of earlier cases), rehearing en banc granted by 506 F3d 717 (9th Cir Oct 17, 2007). Religious healing involving cannabis is not required by plaintiffs' religion, but such healing suffices as "any exercise of religion."

Accordingly, plaintiffs argue that their copious amounts of marijuana are necessary not only for church members' use but also for broad-based healing missions. As a result, plaintiffs' justification for its expansive injunction may be credible, and thus plaintiffs might make out a prima facie RFRA claim.

2

Even if the court agrees with plaintiffs on those issues, plaintiffs' claim fails because their near-exclusive reliance on <u>Gonzales v O Centro Espirita Beneficente Uniao Do Vegetal</u>, 546 US 418, 424 (2006) is misplaced. In this case, unlike in <u>O Centro Espirita</u>, the government's enforcement of the CSA against plaintiffs furthers a compelling governmental interest and is the least restrictive means of doing so. See 42 USC § 2000bb-1(b).

9

1  In O Centro Espirita, the Supreme Court held that the
2  government did not have a compelling interest in refusing an
3  exemption from the CSA for a small religion using a small quantity
4  of a hallucinogenic tea.  The Court held there was insufficient
5  evidence that the small church's minimal use of the drug would
6  either cause health problems or result in diversion of the drug to
7  recreational users.  O Centro Espirita, 546 US at 425-27, 436-37.
8  It should go without saying that the reasoning in O
9  Centro Espirita does not apply to plaintiffs' distribution of tens
10 of thousands of marijuana plants.
11 If there is any case where the government's "need for
12 uniformity precludes the recognition of exceptions to generally
13 applicable laws under RFRA," then this may be it.  O Centro
14 Espirita, 546 US at 436.  The threat of diversion of plaintiffs'
15 sacrament into black markets is high.  See O Centro Espirita
16 Beneficiente Uniao Do Vegetal v Ashcroft, 342 F3d 1170, 1185 (10th
17 Cir) (distinguishing marijuana).  Accordingly, O Centro Espirita
18 does not offer plaintiffs the salvation they invoke.  Defendants
19 have met their burden to show a compelling government interest in
20 enforcing the CSA against plaintiffs.
21 Lastly, even if the government has a compelling
22 government interest in preventing plaintiffs from distributing tens
23 of thousands of marijuana plants as part of their mission to heal
24 the sick, the CSA must be the least restrictive means of
25 accomplishing that objective.  Plaintiffs do not offer any
26 potential less restrictive means, and defendants argue that none
27 exists.  The court agrees with defendants.  Confining plaintiffs'
28 religious healing uses to church members is not a viable

10

alternative because plaintiffs' healing missions apply explicitly to non-members. Once plaintiffs contend that part of their religious exercise is to heal the masses, there is no way to respect that part of their religious practice without running afoul of the government's compelling interest in preventing diversion.

Accordingly, because the government has a compelling interest in preventing tens of thousands of marijuana plants from circulating in the United States, RFRA's protection of free exercise does not apply. See 42 USC § 2000bb-1(b). Regardless of plaintiffs' requested relief, plaintiffs have failed to state a claim.

### III

The court GRANTS defendants' motion to dismiss plaintiffs' claims. Plaintiffs' claims are dismissed with prejudice, and the clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

**VAUGHN R WALKER**
**United States District Chief Judge**